'O'

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAMSBURG NATIONAL INSURANCE COMPANY,<br><br>         Plaintiff,<br><br>   v.<br><br>NEW YORK MARINE AND GENERAL INSURANCE COMPANY,<br><br>         Defendant. | CV 21-4377-RSWL-JDEx<br><br>**ORDER re: Defendant's Motion to Dismiss** [12] |

Currently before the Court is Defendant New York Marine and General Insurance Company's ("Defendant") Motion to Dismiss (the "Motion") [12].  Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS in part** and **DENIES in part** the Motion.

1

# I.  BACKGROUND

## A.  Factual Background

Plaintiff Williamsburg National Insurance Company
("Plaintiff"), a Michigan-based insurance corporation,
issued a motor carrier liability policy to DLR Express,
Inc. ("DLR") that provides a $1,000,000 combined single
limit for covered accidents.  Compl. ¶¶ 3, 5, ECF No. 1.
Attached to the policy is the MCS-90 endorsement, which
is a standardized form that requires an insurer to pay
up to its policy limit to members of the public for
liability arising from its insured's operations even
where the policy itself provides no coverage.  Id. ¶ 5.

Defendant, a New York-based insurance corporation,
issued a motor carrier liability policy ("Defendant
Policy") to Intermodal Contractor's Association of North
America.  Id. ¶¶ 4,6.  Arthur Trimble, Jr.  ("Trimble")
was later added as a certificate holder under this
policy.  Id. ¶ 6.  Defendant Policy similarly provides a
$1,000,000 combined single limit and includes the MCS-90
endorsement.  Id. ¶¶ 6, 31.

DLR leased a tractor with an attached trailer to
Trimble pursuant to an Equipment Lease Agreement and a
sub-haul agreement (collectively, "Agreement").  Id.
¶ 8.  Under the Agreement, Trimble agreed to indemnify
and release DLR against all liability arising out of
Trimble's use of the tractor as follows:

> Lessee hereby releases and agrees to indemnify
> lessor,  its  officers,  agents  and  employees

2

against all penalties, taxes, legal expense,
fines, fees, levies, forfeitures, loss, damage,
expense and liability arising directly or
indirectly out of the existence, condition,
use, custody or operation of the Equipment
. . . received by the Lessee until it is
returned by the Lessor.

Id. ¶ 9.

Pursuant to the Agreement, Trimble also added DLR
to Defendant Policy as an additional insured with
respect to the tractor. Id. ¶ 11. The Policy obligates
Defendant to pay all sums Trimble is liable for related
to any accident involving the tractor. Id. ¶ 29.

On March 5, 2015, Trimble was driving the tractor
pulling a loaded trailer when he rear-ended a truck
being driven by Ronald Foster, Jr. Id. ¶ 7. On March
3, 2017, Foster, along with a passenger and the truck's
owner, filed a complaint against Trimble in Los Angeles
Superior Court, alleging injuries and damages related to
the accident. Id. ¶ 12. DLR was later named as a Doe
defendant. Id. ¶ 15. Defendant defended and
indemnified Trimble in the Foster litigation, and all
claims against Trimble were settled for $155,000. Id.
¶ 13. Plaintiff alleges that Defendant "was aware, via
its retained defense counsel for Trimble, that its
additional insured DLR was named as a defendant in the
Foster litigation." Id. ¶ 14. However, neither
Plaintiff nor Defendant provided a defense for DLR in
the Foster litigation initially, and consequently DLR

1   never appeared in the case.  Id. ¶¶ 17, 18.

2       A default judgment of $6,085,702 was entered

3   against DLR.  Id. ¶ 18.  DLR moved to set aside the

4   default judgment, and subsequently filed an appeal when

5   that motion was denied.  Id.  DLR then tendered its

6   defense to Plaintiff, and Plaintiff agreed to defend DLR

7   in the Foster litigation under a reservation of rights.[1]

8   Id. ¶ 19.  A month later, DLR tendered its defense and

9   request for indemnity to Defendant as an additional

10  insured under Defendant Policy.  Id. ¶ 21.

11      Foster and the other plaintiffs then agreed to

12  settle all claims against DLR for $1,000,000.  Id. ¶ 22.

13  Both DLR and Plaintiff demanded that Defendant

14  contribute its remaining policy limit to settle the

15  claim, but Defendant refused.  Id. ¶¶ 23-25.

16  Ultimately, Plaintiff paid the entire settlement amount

17  on behalf of DLR.  Id. ¶¶ 22, 26.  Plaintiff alleges

18  that Defendant had the primary duty to defend and

19  indemnify DLR in the Foster litigation because DLR

20  qualifies as an additional insured under Defendant

21  Policy.  Id. ¶ 34.

22  **B.  Procedural Background**

23      On May 26, 2021, Plaintiff filed its Complaint [1]

24

_____

25      [1] Though not mentioned in the Complaint, Plaintiff explains
in its Opposition to the Motion that it was required to provide

26  coverage for DLR's claim despite DLR's lack of timely notice of
the Foster litigation under the MCS-90 included in its own

27  policy.  Pl.'s Opp. to Mot. to Dismiss ("Opp.") 16:27-17:3, ECF
No. 15.

28

alleging six causes of action: (1) declaratory relief re: Defendant's duty to indemnify, (2) declaratory relief re: Defendant's duty to defend, (3) equitable contribution for sums paid to indemnify, (4) equitable contribution for sums paid to defend, (5) equitable subrogation for sums paid to indemnify, and (6) equitable subrogation for sums paid to defend.

Defendant filed this Motion [12] on July 16, 2021. Plaintiff then filed its Opposition [15] on August 3, 2021.  Defendant replied [16] on August 10, 2021.

## II.  DISCUSSION

### A.  Legal Standard

Federal Rule of Civil Procedure ("Rule") 12(b)(6) allows a party to move for dismissal of one or more claims if the pleading fails to state a claim upon which relief can be granted.  A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted).  Dismissal is warranted for a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.  Swartz v.

1 | KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).  A court
2 | must presume all factual allegations of the complaint to
3 | be true and draw all reasonable inferences in favor of
4 | the non-moving party.  Klarfeld v. United States, 944
5 | F.2d 583, 585 (9th Cir. 1991).  The question is not
6 | whether the plaintiff will ultimately prevail, but
7 | whether the plaintiff is entitled to present evidence to
8 | support its claims.  Jackson v. Birmingham Bd. of Educ.,
9 | 544 U.S. 167, 184 (2005) (quoting Scheuer v. Rhodes, 416
10 | U.S. 232, 236 (1974)).  While a complaint need not
11 | contain detailed factual allegations, a plaintiff must
12 | provide more than "labels and conclusions" or "a
13 | formulaic recitation of the elements of a cause of
14 | action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555
15 | (2007).  However, "a well-pleaded complaint may proceed
16 | even if it strikes a savvy judge that actual proof of
17 | those facts is improbable, and 'that a recovery is very
18 | remote and unlikely.'"  Id. at 556 (quoting Scheuer v.
19 | Rhodes, 416 U.S. 232, 236 (1974)).
20 | **B.**  **Analysis**
21 |     1.  <u>Judicial Notice</u>
22 |     Pursuant to Federal Rule of Evidence 201, "[a]
23 | court may judicially notice a fact that is not subject
24 | to reasonable dispute because it . . . can be accurately
25 | and readily determined from sources whose accuracy
26 | cannot reasonably be questioned."  Accordingly, while a
27 | court may take judicial notice of matters of public
28 | record, a court may not take judicial notice of the

substance of such records if subject to reasonable
dispute.  Lee v. City of Los Angeles, 250 F.3d 668, 689-
90 (9th Cir. 2001) (stating that a court may take
judicial notice of the fact that certain court records
were filed but not of the truth of any facts stated
therein).

          a.   Defendant's Request

    Defendant requests the Court take judicial notice
of ten court records and pleadings from the Foster
litigation: (1) the docket, (2) the complaint,
(3) Trimble's answer, (4) the amendment to the complaint
substituting DLR for a Doe defendant, (5) the proof of
service of the amendment, (6) the default entered
against DLR, (7) the order granting default judgment,
(8) DLR's motion to set aside default and default
judgment, (9) the order denying DLR's motion to set
aside default and default judgment, and (10) the Los
Angeles Superior Court's entry of default judgment
against DLR.  See generally Def.'s Req. for Judicial
Notice, ECF No. 12-1.

    Because these documents are all court records and
consequently their existence is not subject to
reasonable dispute, the Court **GRANTS** Defendant's
request.  However, the Court does not take judicial
notice of any reasonably disputed facts within these
filings.  See Selane Prods., Inc. v. Cont'l Cas. Co.,
No. 2:20-cv-07834-MCS-AFM, 2020 WL 7253378, at *3 (C.D.
Cal. Nov. 24, 2020).

### b.   Plaintiff's Request

Plaintiff requests the Court take judicial notice of Trimble's opposition to the plaintiff's ex parte motion to continue trial and reopen discovery in the Foster litigation.  See generally Pl.'s Req. for Judicial Notice, ECF No. 15-1.  Because this document is a court record and therefore its existence is not subject to reasonable dispute, the Court similarly **GRANTS** Plaintiff's request.  However, the Court does not take judicial notice of any reasonably disputed facts within the opposition.

### 2.   The Motion

Defendant moves to dismiss all six causes of action against it, asserting that each claim is "predicated on the premise that [Defendant] had a duty to defend and indemnify [Plaintiff]'s insured."  Def.'s Mem. P. & A. in Supp. of Mot. to Dismiss ("Mot.") 1:4-5, ECF No. 12-2.  Defendant argues primarily that because DLR failed to provide Defendant with pre-judgment notice of the claim against it, Defendant was not obligated to defend or indemnify DLR under Defendant Policy.  Id. at 2:8-23.

### a.   Equitable Subrogation

In the insurance context, subrogation is defined as "an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid."  Fireman's Fund Ins. Co. v. Md. Cas. Co., 77 Cal. Rptr. 2d 296, 302 (Cal. Ct.

App. 1998).  In other words, "[t]he right of subrogation
is purely derivative" because it requires the insurer to
"stand in the shoes" of its insured.  Id. at 303.
Accordingly, an essential element of a claim for
subrogation is that "the insured has an existing,
assignable cause of action against the defendant which
the insured could have asserted for its own benefit had
it not been compensated for its loss by the insurer."
Id. at 303.

Under California law, an insurer's duty to defend
and subsequently indemnify an insured arises "on tender
of defense" of a third-party lawsuit by the insured to
the insurer.  Foster-Gardner, Inc. v. Nat'l Union Fire
Ins. Co., 959 P.2d 265, 273 (1998) (citations omitted).
"[T]ender occurs when an insurance company is provided
with the complaint, at which point the insurance company
can make a proper determination whether policy coverage
applies."  City of L.A. v. Nat'l Union Fire Ins. Co.,
Case No. 12-cv-07662-BRO-AGRx, 2013 WL 12121974, at *4
(C.D. Cal. Dec. 26, 2013).  As between the insured and
its insurer:

> [m]ere knowledge that an insured is sued does
> not constitute tender of a claim. What is
> required is knowledge that the suit is
> potentially within the policy's coverage
> coupled with knowledge that the insurer's
> assistance is desired. An insurance company is
> not required to intermeddle officiously where
> its services have not been requested.

1   <u>M.B.L., Inc. v. Fed. Ins. Co.</u>, Case No. CV 13-03951 BRO

2   (AGRx), 2014 WL 12584437, at *7 (May 30, 2014) (quoting

3   <u>Hartford Accident & Indem. Co. v. Gulf Ins. Co.</u>, 776

4   F.2d 1380, 1383 (7th Cir. 1985)).

5        Defendant argues that because DLR failed to timely

6   tender defense to Defendant and therefore has no direct

7   claim against Defendant, Plaintiff's claims for

8   subrogation must also fail.  Mot. 19:2-4.  The Court

9   agrees.  While the Complaint alleges that DLR qualifies

10  as an additional insured under Defendant Policy and that

11  Defendant thus "owes the primary duty" to indemnify and

12  defend DLR, Compl. ¶¶ 55, 60, Plaintiff does not allege

13  that DLR itself has an existing, assignable cause of

14  action against Defendant.  Without establishing this

15  necessary element, Plaintiff fails to state a claim for

16  equitable subrogation.  Moreover, Plaintiff itself

17  relies on the distinction between its own position and

18  that of DLR, suggesting that its claim is not predicated

19  on stepping into DLR's shoes.  Opp. 15:17-28 (arguing

20  that cases cited by Defendant are distinguishable

21  because they involved "insureds suing insurers," while

22  the standard for notice is different when one insurer is

23  suing another).

24     The MCS-90 endorsement form attached to Defendant

25  Policy is no help to Plaintiff with respect to its

26  subrogation claim.  It is true that this form requires

27  an insurer to pay members of the public for final

28  judgments obtained against the insured regardless of the

1  insured's failure to comply with policy conditions.
2  Global Hawk Ins. Co. v. Le, 170 Cal. Rptr. 403, 411
3  (Cal. Ct. App. 2014) (citing 49 C.F.R. § 387.15 (2013)).
4  However, the MCS-90 form does not apply here because
5  "the integral purpose of the MCS-90, to protect third
6  party members of the public, is not implicated in a
7  dispute between two insurers." John Deere Ins. Co. v.
8  Nueva, 229 F.3d 853, 858 (9th Cir. 2000).[2]  Because
9  Trimble, the injured member of the public, has already
10  been compensated for his injuries, Plaintiff cannot rely
11  on the MCS-90 form to assert a claim against Defendant
12  for subrogation.
13      Accordingly, the Court **GRANTS** the Motion as to the
14  fifth and sixth causes of action for equitable
15  subrogation for defense and indemnity costs.
16          b.  Equitable Contribution
17      Unlike subrogation, "the right to contribution
18  arises when several insurers are obligated to indemnify
19  or defend the same loss or claim, and one insurer has
20  paid more than its share of the loss or defended the
21  _____
22      [2] To the extent the parties dispute whether John Deere is
   still because binding precedent on this Court of recent
23  Regulatory Guidance published by the Federal Motor Carrier Safety
   Administration that contradicts John Deere's holding, those
24  arguments are inapplicable to the portion of the holding cited
   above.  The parties seem to agree on this point.  See Mot. 23:8-
25  11 (citing John Deere as binding authority on this point); See
   Opp. 18:11-17 (acknowledging that the entirety of John Deere is
26  still binding authority).  Moreover, regulatory guidance does not
   overrule previous Ninth Circuit authority because such agency
27  interpretations do not carry the force of law.  United States v.
   Mead Corp., 533 U.S. 218, 226-27 (2001).
28

11

action without any participation by the others."
Fireman's Fund, 77 Cal. Rptr. 2d at 303.  Rather than
standing in the shoes of the insured, contribution
affords an insurer "independent standing to assert a
cause of action against its coinsurers . . . when it has
undertaken the defense or indemnification of the common
insured."  Id. at 303.  Further, because the right to
equitable contribution does not stem from any contract
between the insurers, an action for contribution is not
controlled by the language of any policies between the
insurers and their insureds.  Id. at 313 (quoting Signal
Companies, Inc. v. Harbor Ins. Co., 612 P.2d 889, 895
(1980)).  Thus, while an insurer's duty to defend only
arises upon tender of defense by the insured, "an
insured's lack of tender or compliance with a policy
provision is not fatal to a coinsurer's right of
equitable contribution; rather, adequate notice of the
potential for contribution and the opportunity for
investigation and participation in the defense in the
underlying litigation will suffice."  OneBeacon Am. Ins.
Co. v. Fireman's Fund Ins. Co., 95 Cal. Rptr. 3d 808,
822 (Cal. Ct. App. 2009).

Defendant argues that Plaintiff has failed to state
a claim for contribution because DLR failed to tender
defense to Defendant and thus was not covered under
Defendant Policy.  Mot. 9:4-11:23.  Accordingly,
Plaintiff is not entitled to contribution because
Plaintiff and Defendant "did not afford coverage for the

1   same risk." Id. at 21:2-4.  But whether DLR properly
2   tendered defense or otherwise complied with the terms of
3   Defendant Policy is irrelevant to Plaintiff's claim for
4   equitable contribution, as this claim does not hinge on
5   any contract between DLR and Defendant.  Rather,
6   contribution requires only that Defendant had
7   constructive notice of a claim that *would be* covered by
8   Defendant Policy had DLR tendered defense.  See
9   OneBeacon, 95 Cal. Rptr. 3d at 823.

10       Defendant further argues that it should not be
11  subject to contribution because it suffered prejudice by
12  DLR's lack of tender, namely because DLR could have
13  joined in the settlement that Defendant reached on
14  behalf of Trimble.  Mot. 18:6-9.  However, such
15  prejudice is mitigated where the insurer had sufficient
16  notice and the opportunity to investigate and
17  participate in the defense of DLR but nevertheless chose
18  not to.  See OneBeacon, 95 Cal. Rptr. 3d at 823.

19       The Court next considers whether Plaintiff has
20  adequately alleged that Defendant had sufficient inquiry
21  notice of the potential for a contribution claim by DLR.
22  "[A]n insurer's obligation of equitable contribution for
23  defense costs arises where, after notice of litigation,
24  a diligent inquiry by the insurer would reveal the
25  potential exposure to a claim for equitable
26  contribution." Id.  A party is charged with notice of
27  "all those facts which he might have ascertained had he
28  diligently pursued the requisite inquiry." Cal.

1   <u>Shoppers, Inc. v. Royal Globe Ins. Co.</u>, 221 Cal. Rptr.

2   171, 189 (Cal. Ct. App. 1985) (finding that insurer had

3   inquiry notice where insured tendered the summons and

4   complaint for defense in an envelope marked with the

5   wrong insured's name); <u>see also</u> <u>OneBeacon</u>, 95 Cal. Rptr.

6   3d at 824-25 (finding that insurer had inquiry notice

7   where insureds notified insurer of lawsuit against them,

8   and numerous insurer documents contained the policy

9   numbers of policies issued to named and additional

10  insureds).

11      Plaintiff alleges that Defendant "was aware, via

12  its retained defense counsel for Trimble, that its

13  additional insured DLR was named as a defendant in the

14  <u>Foster</u> litigation." Compl. ¶ 16.  Plaintiff further

15  alleges that Trimble had added DLR as an additional

16  insured under Defendant Policy pursuant to a Certificate

17  of Liability Insurance ("Certificate").  These facts,

18  taken as true, are sufficient to plausibly allege that

19  Defendant had notice to inquire further as to DLR's

20  coverage under Defendant Policy.  Like <u>OneBeacon</u>, where

21  the insurer had documents indicating policy coverage for

22  the insureds, Defendant's execution of the Certificate

23  identifying DLR as an additional insured should have

24  caused Defendant to inquire further once DLR was named

25  as a Doe defendant in the <u>Foster</u> litigation.

26      Defendant asserts that it did not have constructive

27  notice of DLR's addition to the litigation because the

28  knowledge of Trimble's defense counsel should not be

imputed to Defendant. Mot. 16:4-7.  The Court disagrees.

In the tripartite relationship between insurer, insured, and counsel, counsel's goal is to eliminate liability to third parties.  <u>San Diego Navy Fed. Credit Union v. Cumis Ins. Society, Inc.</u>, 208 Cal. Rptr. 494, 498 (Cal. Ct. App. 1984).  DLR's addition to the case made it likely that DLR would assert a claim against Trimble and his insurer as an additional insured under Defendant Policy.  Because defense counsel would have been obligated to inform his clients of this possibility, defense counsel's knowledge of DLR's presence in the action is imputed to Defendant.  <u>See</u> Cal. Civ. Code § 2332 (stating that a principal has notice of anything an agent has notice of and "ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other").[3]

Defendant also argues that the Certificate naming DLR as an additional insured fails to show that Defendant had notice of DLR's status because it does not show that Defendant Policy was ever actually amended. <u>See</u> Def.'s Reply Brief ("Reply") 8:27-9:1, ECF No. 16. This argument is similarly unavailing.  Plaintiff need not prove at this stage that Defendant Policy was

_____

[3] In any event, Plaintiff's statement that Defendant had notice via defense counsel must be accepted as true.  <u>See</u> <u>Iqbal</u>, 556 U.S. at 678.  The allegation that defense counsel informed Defendant of DLR's addition to the litigation, presumably because of Defendant's potential liability to it, is at the very least plausible for the reasons stated above.

amended to name DLR as an additional insured.  Rather, Plaintiff need only assert that Defendant had notice of DLR's status as an additional insured and of DLR's potential claim for indemnification under Defendant Policy.  Plaintiff has pled as much, and it is plausible that the Certificate put Defendant on notice of DLR's status as an additional insured.  <u>See</u> Compl. ¶¶ 11, 16.

In sum, Plaintiff has sufficiently pled that Defendant had inquiry notice of DLR's involvement in the <u>Foster</u> litigation and the potential for a claim for equitable contribution.  Accordingly, the Court **DENIES** the Motion as to the equitable contribution claims.

3.  <u>Declaratory Relief</u>

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of the appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C § 2201.  A court has jurisdiction to issue a declaratory judgment if "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." <u>Md. Cas. Co. v. Pac. Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941).

Defendant argues that declaratory relief in this case is inappropriate because declaratory relief is not designed to address past wrongs, and courts have dismissed claims for declaratory judgment that accompany

16

breach of contract claims as duplicative.  Mot. 24:5-25:4.  However, Defendant cites no authority, and the Court has found none, to support the proposition that declaratory relief is inappropriate when accompanying a claim for equitable relief.  Indeed, courts have repeatedly allowed for claims of both declaratory relief and equitable contribution in similar circumstances. See, e.g., <u>Ironshore Spec.Ins. Co. v. Everest Indem. Ins. Co.</u>, No. 20-55860, 2021 WL 3878592, at *3 (9th Cir. Aug. 31, 2021); <u>Westport Ins. Corp. v. California Cas. Mgmt. Co.</u>, 916 F.3d 769 (9th Cir. 2019); <u>Axis Surplus Ins. Co. v. Glencoe Ins. Ltd.</u>, 139 Cal. Rptr. 3d 578 (Cal. Ct. App. 2012).

Defendant further argues that because Plaintiff has not stated a claim for either contribution or subrogation, Plaintiff's declaratory relief claims must be dismissed.  Mot. 25:9-12.  However, because the Court holds that Plaintiff sufficiently alleged the inquiry notice required for a contribution claim, the accompanying declaratory relief claims similarly survive a motion to dismiss.

Accordingly, the Court **DENIES** the Motion as to Plaintiff's claims for declaratory relief.

### III.  CONCLUSION

Based on the foregoing, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss. Plaintiff's fifth and sixth causes of action are dismissed **with leave to amend** within twenty-one (21) days of this Order.  Defendant's Motion is **DENIED** as to Plaintiff's first, second, third, and fourth causes of action.

**IT IS SO ORDERED.**

DATED: September 29, 2021

/s/ Ronald S.W. Lew
_____
**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge

18