1  McCormick, Barstow, Sheppard,
   Wayte & Carruth LLP
2  James P. Wagoner, #58553
     *jim.wagoner@mccormickbarstow.com*
3  Nicholas H. Rasmussen, #285736
     *nrasmussen@mccormickbarstow.com*
4  7647 North Fresno Street
   Fresno, California 93720
5  Telephone: (559) 433-1300
   Facsimile: (559) 433-2300
6
7  Attorneys for New York Marine and
   General Insurance Company

8                  UNITED STATES DISTRICT COURT
9
10        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11
12  Williamsburg National Insurance       Case No. 2:21-CV-4377-RSWL-JDEx
    Company,
13                                         **NEW YORK MARINE AND**
                Plaintiff,                 **GENERAL INSURANCE**
14                                         **COMPANY'S REPLY IN SUPPORT**
          v.                               **OF ITS MOTION TO DISMISS**
15                                         **WILLIAMSBURG'S FIRST**
    New York Marine and General            **AMENDED COMPLAINT**
16  Insurance Company,
                                           Date:    July 12, 2022
17              Defendant.                 Time:    10:00 a.m.
                                           Crtrm.:  TBD
18
                                           The Hon. Ronald S.W. Lew
19
20
21
22
23
24
25
26
27
28

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

1

## <u>**TABLE OF CONTENTS**</u>

2

<u>**Page**</u>

3
I.      INTRODUCTION ................................................................................... 1

4
II.     RELEVANT BACKGROUND FACTS ................................................... 3

5
III.    LEGAL ARGUMENT ............................................................................. 5

6
7
        A.      Neither DLR Nor Williamsburg Ever Attempted To Tender DLR's Defense To NY Marine, And As A Result, NY Marine Had No Duty To Defend DLR Or Even To Investigate Its Right To A Defense ........................................................................................... 5

8
9
                1.      Neither DLR Nor Williamsburg Tendered DLR's Defense And Indemnity To NY Marine Until After NY Marine Had Suffered Prejudice ....................................................... 5

10
11
12
                2.      The Fact That Neither DLR Nor Williamsburg Tendered The Defense To DLR To NY Marine In Time To Prevent Prejudice To NY Marine Is Fatal To Williamsburg's Claims ............................................................................................. 8

13
14
        B.      Civil Code § 1714 Does Not Render Williamsburg's Claims Viable Because It Does Not Establish A Duty Where, As Here, None Otherwise Exists................................................................... 11

15
16
        C.      Trimble Is A "Named Insured" Under the NY Marine Policy, But DLR Most Certainly Is Not.................................................... 13

17
        D.      Williamsburg Is Not Entitled To Recover Its Settlement Payments By Way Of Its Claim For Equitable Indemnity .................................... 16

18
19
        E.      Because the Fosters Released NY Marine, The MCS-90 Endorsement to the NY Marine Policy is Immaterial ......................... 17

20
        F.      The MCS-90 Is Not Applicable to Williamsburg's Claims.................. 18

21
22
        G.      Even if The MCS-90 Is Relevant, Since it Applies Only To The "Named Insured"—Arthur Trimble Jr.—And Not DLR, Williamsburg Has No Basis For Recovery Under Any Of Its Theories........................................................................................ 18

23
24
        H.      New York Marine's Motion To Dismiss Williamsburg's First Amended Complaint Is Neither Governed By The "Law Of The Case" Nor Is It A "Motion for Reconsideration" ................................ 22

25
26
        I.      Williamsburg's Procedural Arguments Reflect A Lack of Good-Faith Meet-and-Confer Efforts on Its Part............................................ 24

IV.     CONCLUSION ..................................................................................... 25

27

28

i

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

1

## TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4
5

*Adelman v. Associated Int'l Ins. Co.,*
   90 Cal.App.4th 352 (2001) ..................................................................... 12

6
7

*Aerojet-General Corp. v. Transport Indem. Co.,*
   17 Cal.4th 38 (1997) ........................................................................... 6, 11

8
9

*Ahern v. Dillenback,*
   1 Cal.App.4th 36 (1991) ......................................................................... 11

10

*Askins v. U.S. Dept. of Homeland Security,*
   899 F.3d 1035 (9th Cir. 2018) ............................................................. 3, 22

11
12

*Berman v. Gulf Ins. Co.,*
   2004 WL 909239 (April 29, 2004) ........................................................... 9

13
14

*Boedeker v. Farley*
   2020 WL 2536969 *1 (C.D.Cal. Feb. 5, 2020) ...................................... 24

15
16

*Burchett v. Global Supertankers Services, LLC,*
   2021 WL 1614397 (E.D.Cal. April 26, 2021) ........................................ 22

17
18

*Caldera v. J.M. Smucker Co.,*
   2013 WL 6987905 (C.D.Cal. June 3, 2013) ........................................... 24

19
20

*California Shoppers, Inc. v. Royal Globe Ins. Co.,*
   175 Cal.App.3d 1 (1985) .......................................................................... 8

21

*Campbell v. Allstate Ins. Co.,*
   60 Cal.2d 464 (1963) ................................................................................ 9

22
23

*Canal Ins. Co. v. Distribution Servs., Inc.,*
   320 F.3d 488 (4th Cir. 2003) ................................................................... 18

24
25

*Carolina Cas. Ins. Co. v. Estate of Fuentes,*
   433 Fed. Appx. 608 (9thCir. 2011) ........................................................ 15

26
27

*Carolina Cas. Ins. Co. v. Insurance Co. of North Am.,*
   595 F.2d 128 (3d Cir.1979) ..................................................................... 18

28

MCCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

ii

# TABLE OF AUTHORITIES
### (Continued)

**Page**

*Carolina Cas. Ins. Co. v. Underwriters Ins. Co.,*
  569 F.2d 304 (5th Cir. 1978) ...................................................................18

*Century Sur. Co. v. 350 W.A., LLC,*
  2011 WL 4506981 (S.D.Cal. 2011)......................................................6, 19

*Cravens, Dargen & Co. v. Pacific Indem. Co.,*
  29 Cal.App.3d 594 (1972) .................................................................... 1, 7

*Czerwinski v. Scottsdale Ins. Co.,*
  2017 WL 8116235 (C.D.Cal. Sept. 11, 2017) ..........................................7

*Earle v. State Farm Fire & Cas. Co.,*
  935 F.Supp. 1076 (N.D.Cal. 1996)......................................................6, 19

*Empire Fire & Marine Ins. Co. v. Bell,*
  55 Cal.App.4th 1410 (1997) .................................................................15

*Empire Fire & Marine Ins. Co. v. J. Transport, Inc.,*
  880 F.2d 1291 (11th Cir.1989) .............................................................18

*Everett Assocs., Inc. v. Transcon. Ins. Co.,*
  159 F.Supp.2d 1196 (N.D.Cal. 2001) ...................................................12

*Ferdik v. Bonzelet,*
  963 F.2d 1258 (9th Cir. 1992) ..............................................................22

*Gibson v. Government Emp's Ins. Co.,*
  162 Cal.App.3d 441 (1984) ..................................................................11

*Grinnell Mut. Reinsurance Co. v. Empire Fire & Marine Ins. Co.,*
  722 F.2d 1400 (8th Cir.1983) ...............................................................18

*Harper Constr. Co., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, PA,
  377 F.Supp.3d 1134 (S.D.Cal. 2019) .................................................. 1, 7

*Hartford Cas. Ins. Co. v. Mt. Hawley Ins. Co.,*
  123 Cal.App.4th 278 (2004) .................................................................13

*Int'l Longshore and Warehouse Union,*
  2022 WL 1515686 (C.D.Cal. March 8, 2022)........................................22

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

iii

**TABLE OF AUTHORITIES**
(Continued)

Page

*John Deere Ins. Co. v. Truckin' USA,*
   122 F.3d 270 (5th Cir. 1997) .................................................................18, 21

*John Deere Ins. Co.v. Nueva,*
   229 F.3d 853 (9th Cir. 2000) ...........................................................18, 21, 22

*JPI Westcoast Constr., L.P. v. RJS & Assocs., Inc.,*
   156 Cal.App.4th 1448 (2007) ...................................................................... 12

*Kearney v. Foley and Lardner,*
   2012 WL 13175644 (N.D. Cal. July 31, 2012) .............................................22

*Larkin v. ITT Hartford,*
   1999 WL 459351 (N.D.Cal. 1999) ......................................................1, 7, 11

*Lopez v. Wells Fargo Bank, N.A.,*
   2016 WL 6088257 (C.D.Cal. Oct. 17, 2016) ...............................................24

*M.B.L., Inc. v. Fed. Ins. Co.,*
   2014 WL 12584437 (C.D.Cal. 2014) .........................................................1, 7

*McMillin Constr. Servs., L.P. v. Arch Spec. Ins. Co.,*
   2012 WL 13175913 (S.D.Cal. April 25, 2012) ............................................15

*Multicare Health System v. Lexington Ins. Co.,*
   539 Fed.Appx. 768 (9th Cir. 2013) ..............................................................14

*Occidental Fire & Cas. Co. of N. Carolina v. Int'l Ins. Co.,*
   804 F.2d 983 (7th Cir. 1986) ........................................................................18

*OneBeacon Am. Ins. Co. v. Firemans Fund Ins. Co.,*
   175 Cal.App.4th 183 (2009) .......................................................2, 6, 7, 9, 10, 11

*Pac. Indem. Co. v. Superior Ct. In & For City & Cnty. of San Francisco,*
   246 Cal. App. 2d 63 (1966) ............................................................................9

*Pardee Const. Co. v. Ins. Co. of the W.,*
   77 Cal.App.4th 1340 (2000) .........................................................................15

*Rossmoor Sanitation, Inc. v. Pylon, Inc.,*
   13 Cal.3d 622 (1975) ....................................................................................12

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Sanchez v. Lindsey Morden Claims Servs., Inc.*,
72 Cal.App.4th 249 (1999) ...............................................................12

*Select Ins. Co. v. Superior Court*,
226 Cal.App.3d 631 (1990) ........................................................... 1, 7

*Sphere Drake Ins., PLC v. Madrigal Rental, Inc.*,
225 Fed. App'x. 498 (9th Cir. 2007)...............................................6, 19

*Tento Int'l, Inc. v. State Farm Fire & Cas. Co.*,
222 F.3d 660 (9th Cir. 2000) ..........................................................12

*Travelers Prop. Cas. Co. of Am. v. Superior Court*,
215 Cal.App.4th 561 (2013) ............................................................14

*Truck Ins. Exch. v. Unigard Ins. Co.*,
79 Cal.App.4th 966 (2000) ...........................................1, 2, 6, 7, 9, 10, 11

*U.S. v. Cuddy*,
147 F.3d 1111 (9th Cir. 1998) ............................................................3

*Vanleeuwen v. Keyuan Petroch*em., Inc.,
2013 WL 2247394 (C.D.Cal. May 9, 2013).........................................23

*Vape Society Supply Corp. v. Zeiadeh*,
2017 WL 2919080 (C.D.Cal. Feb. 6, 2017) .........................................24

*Wasson v. Atlantic Nat'l Ins,. Co.*,
207 Cal.App.2d 464 (1962) ...............................................................9

**Statutes**

Civ. Code § 1432 ............................................................................17

Civ. Code § 1714 ..................................................................11, 12, 13

Civ. Code § 2848 ............................................................................17

Ins. Code § 384(a)...........................................................................15

**Rules**

Federal Rules of Civil Procedure 1.....................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

v

# TABLE OF AUTHORITIES
### (Continued)

**Page**

Local Rule 7-3 ...........................................................................................24

**Other Authorities**

13 Couch on Ins. § 187:5  (3rd ed. 2022 update) ........................................9

Croskey, et al., CAL. PRAC. GUIDE: INSURANCE LIT. (The Rutter Group) (2021) .....14

*Hille, et al., Appleman on Insurance Law*
   § 3.03A (2011)........................................................................................15

MCCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

## I. __INTRODUCTION__

Plaintiff Williamsburg National Insurance Company's ("Williamsburg") First Amended Complaint ("FAC") alleges causes of action against New York Marine and General Insurance Company ("NY Marine") for contribution, indemnity, negligence, and "tort of another", all of which are predicated on the incorrect premise that NY Marine owed a duty to defend and indemnify Williamsburg's named insured, DLR Express, Inc. ("DLR"), in the underlying action entitled *Ronald E. Foster, Jr., et al., v. Arthur J. Trimble, Jr., et al.* (the *Foster* action"). In opposing NY Marine's motion to dismiss, Williamsburg raises a litany of arguments, all of which fundamentally misconstrue the NY Marine policy and/or otherwise fail to withstand analysis.

First, and most fundamentally, under well-established California law, even an insurer which has *actual notice* that an insured has been sued has *no duty to even investigate* the insured's potential entitlement to a defense—much less a duty to provide a defense—in the absence of *some affirmative conduct* by the insured or some person or entity on its behalf indicating a desire to tender its defense to the insurer. *M.B.L., Inc. v. Fed. Ins. Co.*, 2014 WL 12584437, at *7 (C.D.Cal. 2014), aff'd, 675 F. App'x 731 (9th Cir. 2017); *Larkin v. ITT Hartford,* 1999 WL 459351, at *8 (N.D.Cal. 1999), *aff'd sub nom. Larkin v. ITT/Hartford,* 34 F. App'x 579 (9th Cir. 2002); *Select Ins. Co. v. Superior Court,* 226 Cal.App.3d 631, 638 and fn. 4 (1990) (where insurer defended others in certain litigation filed by its insured and thereby became aware of action against its insured which was not tendered, no obligation to defend arose as there was no evidence that the insured "would look to it for defense or indemnity" in connection with the un-tendered action.); *Cravens, Dargen & Co. v. Pacific Indem. Co.* 29 Cal.App.3d 594, 602-603 (1972); *Truck Ins. Exch. v. Unigard Ins. Co.*, 79 Cal.App.4th 966, 979 (2000); *Harper Constr. Co., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, PA, 377 F.Supp.3d 1134, 1142 (S.D.Cal. 2019).

Notably, Williamsburg's Opposition does not even attempt to substantively refute this well-understood rule. However, since Williamsburg's FAC admits that

MCCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

1

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

neither DLR nor Williamsburg gave notice to NY Marine, much less tendered DLR's defense and indemnity until *months* after the default judgment had been entered against it and its motion to set aside the default judgment was denied, NY Marine simply never had any obligation to defend or indemnify DLR. Indeed, as this Court has previously concluded, DLR *itself* has no viable claims against NY Marine for that very reason. As a result, Williamsburg also cannot state a viable claim for relief under *any* of its causes of action.

Furthermore, Williamsburg's claim of contribution similarly fails to withstand analysis.  Although actual notice to the targeted insurer is not required for such a claim, case law makes clear that in the absence of a tender by the insured, but where an insurer seeks contribution the insurer seeking contribution must still itself have provided notice to the targeted insurer in time for it to take steps to protect itself by, for instance, assuming the insured's defense or participating in settlement of the underlying action.  *Truck Ins. Exch. v. Unigard Ins. Co., supra,* 79 Cal.App.4th 966, 978-979; *OneBeacon Am. Ins. Co. v. Firemans Fund Ins. Co.,* 175 Cal.App.4th 183, 200-201 (2009).  Williamsburg never gave NY Marine any such pre-judgment notice and its FAC contains no allegation to that effect.

Finally, Williamsburg's analysis of Trimble's and DLR's respective status as insureds misconstrues as functionally identical two distinct and different documents based solely on the fact that each is referred to as a "certificate". It also ignores entirely the "BROADENED NAMED INSURED" endorsement to the NY Marine policy which, when read in conjunction with the "certificate" issued to Trimble, plainly establishes that he is a "named insured" under the NY Marine policy. On the basis of those misconstructions, Williamsburg then argues at length that the NY Marine policy is incoherent and provides only "illusory" coverage to its insured. A plain reading of the relevant documents, as well as well-established California law, however, establish that Williamsburg's arguments completely fail to withstand analysis.

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

1    Williamsburg also vociferously argues that NY Marine's present motion is
2    barred by the "law of the case" doctrine and that it is "functionally and predominantly
3    an improper motion for reconsideration". (Opp. at pp. 5:21-8:15). However,
4    Williamsburg's argument baldly ignores that a motion to dismiss an amended
5    complaint is not subject to the "law of the case" doctrine, nor can such a motion
6    constitute one for "reconsideration" for the simple and fundamental reason that
7    "[o]nce the plaintiff elects to file an amended complaint, the new complaint is the
8    only operative complaint before the district court." *Askins v. U.S. Dept. of Homeland*
9    *Security,* 899 F.3d 1035, 1043 (9th Cir. 2018). Consequently, "[t]he district court is
10   not ... bound by any law of the case. The district court may decide the second motion
11   to dismiss in the same way it decided the first, but permitting the filing of
12   an amended complaint *requires a new determination*", and indeed is "free to correct
13   any errors or misunderstandings without having to find that its prior decision was
14   'clearly erroneous.'" *Id.* (quoting *U.S. v. Cuddy,* 147 F.3d 1111, 1114 (9th Cir. 1998)).

## II.    RELEVANT BACKGROUND FACTS

16       NY Marine issued Motor Carrier liability policy no. AU2015-000000630 to
17   named insured Intermodal Carrier Association of North America (the "Policy") under
18   which Trimble was a certificate holder via Certificate No. 217A (the "Certificate").
19   (FAC ¶ 6, Ex. A; Wagoner Decl., ¶ 9, Ex. 8; RJN ¶ 8.)

20       The NY Marine policy includes a "BROADENED NAMED INSURED"
21   endorsement which states as relevant that:

22       With respect to coverage provided by this endorsement, the provisions
23       of the Coverage Form apply unless modified by this endorsement.

24       SECTION II LIABILITY COVERAGE A. Coverage 1. Who Is An
25       Insured, the following is added:

27       Any organization you designate as a member of the Intermodal
28       Contractors Association of North America (ICANA) is identified as

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

certificate holder under this policy number and on file with both a Member company of ProSight Specialty Insurance Company and a member company of The Mahoney Group

Any organization you own on the inception of this policy, or newly acquire or form during the policy period and over which you maintain during the policy period, majority ownership or majority interest will qualify as a Named Insured if:

(1) There is no other similar insurance available to that organization; and

(2) The first Named Insured shown in the Declarations of this polciy has the responsibility of placing insurance for that organization; and

(3) The organization is incorporated or organized under the law of the United States of America and is a member of ICANA and/or the Truckers Risk Purchasing Group, Inc.

. . .

(FAC, Ex. A, Dkt. #37-1, at p. 57.)

The NY Marine policy also includes a "DESIGNATED INSURED" endorsement which states as relevant that:

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement identifies person(s) or organization(s) who are "insureds" under the Who Is An Insured Provision of the Coverage Form. This endorsement does not alter coverage provided in the Coverage Form.

. . .

**Name of Person(s) or Organization(s):**

Any Entity where shown on a certificate of insurance or to whom the named insured is obligated by a written "insured contract" or agreement

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

4

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

to provide insurance; However, this coverage shall only apply with respect to liability arising out of operations performed by or on behalf of the Named Insured. Further, this coverage shall not apply to damages arising out of the negligence of the Additional Insured Entity.

(FAC, Ex. A, Dkt. #37-1, at p. 67.)

## III.   LEGAL ARGUMENT

### A.   Neither DLR Nor Williamsburg Ever Attempted To Tender DLR's Defense To NY Marine, And As A Result, NY Marine Had No Duty To Defend DLR Or Even To Investigate Its Right To A Defense

#### 1.   Neither DLR Nor Williamsburg Tendered DLR's Defense And Indemnity To NY Marine Until After NY Marine Had Suffered Prejudice

NY Marine's legal theory is straightforward: (1) in the absence of a tender by DLR, it owed no duty to defend or indemnify DLR; (2) DLR did not tender the underlying *Foster* litigation, and Williamsburg did not provide notice, until long after a default judgment had been entered against it and its attempt to set that judgment aside had been denied; (3) the Fosters released all claims against NY Marine, thereby extinguishing any claims by Williamsburg as well; (4) under well-settled principles, the MCS-90 is not relevant to a dispute between insurers, and so Williamsburg may not premise its claims on NY Marine policy's MCS-90; and (5) even if the MCS-90 is relevant to the present dispute, that endorsement applies only to NY Marine's named insured—Arthur Trimble Jr.—and as a result, NY Marine's "late notice" defense to coverage precluded any duty to defend or indemnify DLR with respect to the default judgment against it, and for that same reason, precludes Williamsburg's claims against NY Marine.

In contrast, Williamsburg asserts two alternative legal theories: (1) that NY Marine had a duty to defend and indemnify DLR merely if it was *aware* that DLR might be an insured and had been sued—despite DLR's undeniable lack of tender—such that Williamsburg may assert claims against it; and (2) alternatively, that NYM owed a duty to defend DLR under the MCS-90 endorsement to the NY Marine policy.

5

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

Here, as alleged in Williamsburg's FAC, DLR was named as a defendant in the underlying litigation on November 16, 2018. (FAC ¶ 15.) DLR did not respond to the complaint, and as a result, its default was entered on March 1, 2019, and a default judgment was entered against it in the amount of $6,085,702 on May 4, 2020. (FAC ¶ 18). DLR then moved to set aside the default judgment, but that motion was denied. (*Id.*). Notwithstanding the foregoing, not until July 29, 2020 did DLR first contact NY Marine, and it did not formally tender its defense to NY Marine until October 28, 2020. (FAC ¶ 21.) As to Williamsburg, it did not contact NY Marine until January 5, 2021 when it wrote to NY Marine demanding that it contribute its remaining policy limits to a settlement of the default judgment entered against DLR. (FAC, ¶ 24.)

In short, neither DLR nor Williamsburg made any attempt whatsoever to contact NY Marine until more than a year after the default was initially entered against DLR, and *months* after and its attempt to set that judgment aside was denied and the default judgment was entered.  Thus, as of the time when DLR's defense was first tendered to NY Marine it was far too late, as NY Marine had already been prejudiced by DLR's failure to provide timely notice.  *See, Earle v. State Farm Fire & Cas. Co.,* 935 F.Supp. 1076, 1080-1082 (N.D.Cal. 1996) (where insured fails to give notice until after judgment has been entered, insurer suffers actual prejudice excusing its obligations under the policy); *Century Sur. Co. v. 350 W.A., LLC*, 2011 WL 4506981 at *8 (S.D.Cal. 2011), *aff'd sub nom*. 539 F.App'x 749 (9th Cir. 2013); *see also Sphere Drake Ins., PLC v. Madrigal Rental, Inc.,* 225 Fed. App'x. 498, 499 (9th Cir. 2007) (affirming summary judgment for insurer where notice was provided after default judgment was entered and settlement value of claim was well below policy limit).

Furthermore, under California law, it is axiomatic that an insurer's "duty to defend arises when the insured *tenders defense* of the third party lawsuit to the insurer." *OneBeacon Am. Ins. Co. v. Fireman's Fund Ins. Co., supra,* 175 Cal.App.4th 183, 200 (emphasis in original); *Aerojet-General Corp. v. Transport Indem. Co.,* 17 Cal.4th 38, 61 (1997); *Truck Ins. Exch. v. Unigard Ins. Co., supra,* 79

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

6

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

1   Cal.App.4th 966, 976.

2          With respect to the tender of a defense, "[t]ender can be either formal or

3   constructive." *OneBeacon Am. Ins. Co., supra,* 175 Cal.App.4th at 200; *Unigard,*

4   *supra,* 79 Cal.App.4th at 979, fn 4. *Nevertheless,* whether by "formal" or

5   "constructive" notice, "tender" requires *some affirmative conduct* by the insured or

6   its representative(s) demontrating that "the insurer's assistance is desired." *M.B.L.,*

7   *Inc. v. Fed. Ins. Co*., 2014 WL 12584437, at *7 (C.D.Cal. 2014), aff'd, 675 F. App'x

8   731 (9th Cir. 2017). Thus, as California courts have consistently held, "[m]ere

9   knowledge that an insured is sued does not constitute tender of a claim", and "[a]n

10  insurance company is not required to intermeddle officiously where its services *have*

11  *not been <u>requested</u>*." *Id.*; *Larkin v. ITT Hartford,* 1999 WL 459351, at *8 (N.D.Cal.

12  1999), *aff'd sub nom. Larkin v. ITT/Hartford,* 34 F. App'x 579 (9th Cir. 2002); *Select*

13  *Ins. Co. v. Superior Court, supra,* 226 Cal.App.3d 631, 638 and fn. 4; *Cravens,*

14  *Dargen & Co. v. Pacific Indem. Co., supra,* 29 Cal.App.3d 594, 602-603 (insurer

15  which knew of action did not breach duty to defend where insured never tendered

16  defense); *Truck Ins. Exch. v. Unigard Ins. Co*., *supra,* 79 Cal.App.4th 966, 979

17  ("Absent tender, it is difficult to understand what, if anything, [the insurer] was

18  supposed to do."); *Harper Constr. Co., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,

19  PA, *supra,* 377 F.Supp.3d 1134, 1142 (duty to defend only "arises when the insured

20  tenders defense of the third party lawsuit to the insurer."); *Czerwinski v. Scottsdale*

21  *Ins. Co.,* Case no. CV 17-4408 PA (MRWx), 2017 WL 8116235 (C.D.Cal. Sept. 11,

22  2017) (rejecting constructive notice claim).

23         In short, in the absence of some conduct constituting tender, even an insurer

24  which has *actual knowledge* of the insured's predicament has no duty to investigate

25  its potential rights, much less a duty to defend. Accordingly, it follows that in the

26  absence of a tender by the insured or a third party on its behalf, an insurer has *no duty*

27  *predicated simply on its <u>actual</u> knowledge* of the insured's position.  Nor does it have

28  any duty predicated upon its alleged "constructive knowledge" that the insured has

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

7

1   been sued. That conclusion is perfectly consistent with the holding in *California*

2   *Shoppers, Inc. v. Royal Globe Ins. Co.,* 175 Cal.App.3d 1, 50 (1985), for as that Court

3   acknowledged in concluding that the insurer had "constructive notice" of its insured's

4   tender upon *receiving a mailed copy* of the complaint, the insurer must have known

5   that *someone* was seeking its assistance, and consequently "should have 'investigated'

6   the possibility that *someone*" other than the non-insured entity named on the enclosing

7   envelope "was actually seeking a defense". (Emphasis in original).

8       Here, Williamsburg's own FAC establishes that neither DLR nor Williamsburg

9   made *any* attempt to contact NY Marine—much less tender DLR's defense—until

10  long after judgment had been entered against DLR.  Since neither DLR nor any person

11  or entity acting on its behalf did anything, NY Marine's mere knowledge that it had

12  been sued and served does not constitute either "actual" *or* "constructive" notice of a

13  *tender.*  Consequently, since neither DLR, any person or entity on its behalf, nor

14  Williamsburg took any action which could place NY Marine on even "constructive"

15  notice that DLR was seeking a defense from NY Marine until well after its motion to

16  set aside the default had been denied and a default judgment had been entered against

17  it, NY Marine simply did not owe any duty to DLR—a conclusion with which this

18  Court has previously agreed. (Sept. 29, 2021 Order, Dkt # 18, at pp. 10:5-9 [stating

19  that the Court "agree[d]" with the conclusion that "because DLR failed to timely

20  tender [its] defense to [NY Marine], [it] therefore has no direct claim against [NY

21  Marine]."].)

22      Williamsburg's Opposition makes no substantive response to this well-

23  established California law.

24              **2.    The Fact That Neither DLR Nor Williamsburg Tendered The
                        Defense To DLR To NY Marine In Time To Prevent Prejudice
25                      To NY Marine Is Fatal To Williamsburg's Claims**

26      Notably, this Court's September 29, 2021 Order previously concluded that

27  "whether DLR properly tendered the defense or otherwise complied with the terms of

28  [NY Marine's] policy is irrelevant to Plaintiff's claim for equitable contribution, as

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

1   this claim does not hinge on any contract between DLR and Defendant. Rather,

2   contribution requires only that Defendant had notice of a claim that *would be* covered

3   by [NY Marine's] policy had DLR tendered defense." (Order, Dkt. #18, at p. 13:1-8

4   (emphasis in original).)

5         However, the mere fact that DLR is an "additional insured" under the NY

6   Marine policy and thus was not the party directly contracting with NY Marine fails to

7   excuse it from complying with the terms of the policy, including the obligation to

8   tender its defense. *See, e.g., Wasson v. Atlantic Nat'l Ins,. Co.,* 207 Cal.App.2d 464,

9   468 (1962) (discussing whether additional insured's tender was timely and whether

10   insurer suffered prejudice as a result) (disapproved on other grounds in *Campbell v.*

11   *Allstate Ins. Co.,* 60 Cal.2d 464, 468 (1963)); *Pac. Indem. Co. v. Superior Ct. In &*

12   *For City & Cnty. of San Francisco*, 246 Cal. App. 2d 63, 64 (1966) (additional insured

13   denied arbitration due to failure to comply with notice provisions); *Berman v. Gulf*

14   *Ins. Co.,* Case no. B158597, 2004 WL 909239 *5, *10, fn. 17 (April 29, 2004)

15   (Unpub'd) (finding that judgment holder's claims in direct action against tortfeasor's

16   insurer were barred by additional insured's prejudicial failure to provide notice to

17   insurer of the litigation on which judgment was founded); *see also,* 13 Couch on Ins.

18   § 187:5  (3rd ed. 2022 update) (citing cases and explaining "the prevailing view

19   appears to be that a duty to provide notice under an automobile liability policy exists

20   as to an additional insured…. A policy's duties as to giving notice of an accident apply

21   to an omnibus insured as well as the named insured.").

22         Second, while it is true under that *Truck Ins. Exch. v. Unigard Ins. Co*., *supra*,

23   and *OneBeacon Am. Ins. Co. v. Fireman's Fund Ins. Co., supra*, one insurer may state

24   a claim for contribution against a second insurer notwithstanding the insured's failure

25   to tender its defense to the targeted insurer, *Unigard* and the cases following it are all

26   equally clear that where an insurer seeks contribution in the absence of a tender by

27   the insured, the insurer seeking contribution must still *itself* have provided notice to

28   the targeted insurer in time for the targeted insurer to take steps to protect itself by,

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

9

for instance, assuming the defense or participating in settlement of the underlying action. *See, e.g., Unigard Ins. Co*., *supra*, 79 Cal.App.4th 966, 978-979; *OneBeacon Am. Ins. Co., supra,* 175 Cal.App.4th 183, 200-201. Indeed, the court in *Unigard* expressly "rejected Truck's argument that, regardless of when it learned the identity of potential coinsurers, notice to potential coinsurers was not necessary until the underlying action had concluded", reasoning that "the imposition of contribution on Unigard—a stranger to the litigation—would subject it to a significant financial burden even though it did not enjoy any of the concomitant benefits, e.g., the right to participate in and control the defense. Truck decided to investigate and settle the [underlying litigation] without Unigard's involvement. Having done so, Truck should not be permitted to drag Unigard into the picture after the fact. [¶] ... With prompt notice, the coinsurer can investigate the matter and decide whether to join in the defense. If, however, notice is given *after* the underlying litigation is over, the matter is more likely to end up in court." *Unigard Ins. Co*., *supra*, 79 Cal.App.4th 966, 979-980; *OneBeacon Am. Ins. Co., supra,* 175 Cal.App.4th 183, 200-201 ("Pursuant to *Unigard* and *California Shoppers,* and the public policies articulated in *Home Ins*. and *Cincinnati Cos.,* we adopt the rule that an insurer's obligation of equitable contribution for defense costs arises where, *after notice of litigation*, a diligent inquiry by the insurer would reveal the potential exposure to a claim for equitable contribution, thus providing the insurer the opportunity for investigation and participation in the defense in the underlying litigation.")

Consequently, because an insurer's obligation to investigate or defend is triggered only by tender of the defense, the fact that *neither* DLR *nor* Williamsburg undertook to put NY Marine on notice of DLR's claim until well *after* DLR's failure to provide NY Marine with notice of its claim had resulted in prejudice to NY Marine conclusively establishes the lack of any obligation on the part of NY Marine to defend. As a result, here as in *Unigard*, the failure of either DLR or Williamsburg to place NY Marine on notice of DLR's claim before the default judgment was entered and

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

1   the motion to set aside the default had been denied, resulting in prejudice to NY
2   Marine, is fatal to its claims.

3   **B.  Civil Code § 1714 Does Not Render Williamsburg's Claims Viable Because It Does Not Establish A Duty Where, As Here, None Otherwise Exists**
4

5   In an attempt to avoid the extensive California law establishing that absent a
6   *tender* by or on behalf of the insured, NY Marine cannot be liable to it solely on the
7   basis of its "constructive" (or even "actual") knowledge that DLR was sued,
8   Williamsburg now argues that Civil Code § 1714 imposes a duty of "ordinary care"
9   pursuant to which Williamsburg may state viable claims for negligence and "tort of
10  another" against it. However, Williamsburg's argument fails for the simple and
11  fundamental reason that Civil Code § 1714 does not impose a duty on NY Marine
12  where none otherwise exists.

13  In California it is well established that "absent some conduct on the part of the
14  insurer consistent with assuming broader duties, the insurer's fiduciary duties are
15  limited to those arising out of the insurance contract". *Ahern v. Dillenback,* 1
16  Cal.App.4th 36, 42 (1991) (quoting *Gibson v. Government Emp's Ins. Co.,* 162
17  Cal.App.3d 441, 443 (1984). Thus, in both *Ahern* and in *Gibson,* the Courts rejected
18  Plaintiffs' claims against insurers under Civil Code § 1714 because, as here, the mere
19  generalized notion of a duty to act with "ordinary care" does not suffice to establish
20  an actionable claim *where no duty is owed by the defendant to the plaintiff in the first*
21  *instance.*

22  Here, as observed above and in NY Marine's moving papers, an insurer's
23  obligation to defend an insured only begins upon tender. *OneBeacon Am. Ins. Co.,*
24  *supra,* 175 Cal.App.4th 183, 200; *Aerojet-General Corp., supra,* 17 Cal.4th 38, 61;
25  *Unigard Ins. Co.,* 79 Cal.App.4th 966, 976. Moreover, even an insurer's obligation to
26  *investigate* a potential claim is triggered *only by a tender to the insurer,* which
27  otherwise has no burden "*to inquire if the insured wants a defense any time the insurer*
28  *learns of a possible claim against the insured.*" *Larkin, supra,* 1999 WL 459351, at

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

11

*8 (N.D.Cal. 1999), *aff'd sub nom. Larkin v. ITT/Hartford,* 34 F. App'x 579 (emphasis added). As a result, NY Marine did not owe any duty DLR to which Civil Code § 1714's duty of "ordinary care" would apply.

This conclusion is entirely consistent with the extensive line of California decisions holding that "negligence is not among the theories of recovery generally available against insurers…". *Sanchez v. Lindsey Morden Claims Servs., Inc*., 72 Cal.App.4th 249, 254 (1999); *Tento Int'l, Inc. v. State Farm Fire & Cas. Co*., 222 F.3d 660, 664 (9th Cir. 2000) (same); *Adelman v. Associated Int'l Ins. Co*., 90 Cal.App.4th 352, 369 (2001) ("If an insured seeks to recover in tort for an insurer's mishandling of a claim, it must allege *more* than mere negligence.") (emphasis in original); *see also Everett Assocs., Inc. v. Transcon. Ins. Co*., 159 F.Supp.2d 1196, 1204 (N.D.Cal. 2001), aff'd, 35 F. App'x 450 (9th Cir. 2002) ("Plaintiffs do not cite a single example where a court has found an insurer's failure to properly investigate capable of supporting a separate negligence cause of action under California law. Instead, Plaintiffs urge the Court to rely on fundamental tort principles to recognize its negligence claim. The Court finds doing so would be an expansion unwarranted by California case law and declines to do so.")

Moreover, Williamsburg's tort theories of liability suffer from an additional flaw. Specifically, to state a valid claim in tort, it must establish not only the breach of a duty by NY Marine, but an injury suffered by Williamsburg as a result. Here, Williamsburg contends that the injury suffered was its obligation to fund a settlement on behalf of its insured, DLR. But as the California Supreme Court has previously observed, an insurer "calculate[s] and accept[s] premiums with knowledge that they might be called upon to satisfy a full judgment." *Rossmoor Sanitation, Inc. v. Pylon, Inc.,* 13 Cal.3d 622, 634 (1975). Thus, absent "evidence that either company knew there was or would be other insurance when they issued the policies", "[t]he fact that there [may be] other insurance is a mere fortuitous circumstance." *Id.*; *JPI Westcoast Constr., L.P. v. RJS & Assocs., Inc.,* 156 Cal.App.4th 1448, 1459 (2007) (same);

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

*Hartford Cas. Ins. Co. v. Mt. Hawley Ins. Co.*, 123 Cal.App.4th 278, 291 (2004) (same). It follows that requiring an insurer to indemnify an insured for a loss for which it accepted premiums to insure against cannot constitute an injury or damage as required to sustain a cause of action sounding in tort—even if it may, in some instances, support a claim for indemnity or contribution.

Again, Williamsburg's Opposition makes <u>no</u> substantive argument beyond the recitation of the *general* principle embodied in Civil Code § 1714—and certainly does not address the extensive case law governing the duties owed by insurers. (See generally, Opp. at pp. 18:9-19:22.) Consequently, since NY Marine *had no duty to DLR* in the absence of a tender by DLR, it cannot owe a greater duty to Williamsburg. As a result, Williamsburg cannot premise its claims on a failure by NY Marine to act where no duty to act existed, whether that claim is couched in terms of a claim for "negligence" or "tort of another", and notwithstanding the general duty of "ordinary care" embodied in Civil Code § 1714.

## C.   <u>Trimble Is A "Named Insured" Under the NY Marine Policy, But DLR Most Certainly Is Not</u>

Throughout this litigation, NY Marine has taken the position that Trimble is a "named insured" under the NY Marine policy. *See, e.g.,* Memo. Of P&As ISO Mot. To Dismiss Compl. (Dkt. 12-2), at pp. 3:16, 17:4-5, etc.). Nevertheless, Williamsburg's Opposition now asserts that NY Marine's "statement that Arthur Trimble was its Named Insured was false and appears designed to mislead the Court." (Opp. at pp. 12:25-26.") Williamsburg then engages in an extended argument which contends that because both Trimble and DLR were issued documents referred to as "Certificates", that both Trimble and DLR are "insureds" under the NY Marine policy by operation of a "Designated Insured" endorsement thereto. (Opp., at pp. 12:25-15:4.)

NY Marine does not dispute that DLR may be an "additional insured" under the NY Marine policy, including in certain circumstances by operation of the "Designated Insured" endorsement. However, Williamsburg's extended analysis as it

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

13

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

1    relates to Trimble is flawed for two fundamental and self-evident reasons. First,
2    because the "certificates" to which Williamsburg refers are self-evidently *different*
3    *documents*, with *different purposes—even if the parties coincidentally referred to*
4    *both as "certificates"*.

5          Specifically,  the "Certificate" pursuant to which Trimble is a "named insured"
6    under the NY Marine policy appears identical to and functions as an insurance
7    declarations page. *See, e.g.,* Croskey, et al., CAL. PRAC. GUIDE: INSURANCE LIT. (The
8    Rutter Group), at ¶ 3:42 (2021) (stating that a declarations page typically "[i]dentifies
9    the named insured, policy period, policy limits and any deductible or self-insured
10   retention; and lists the forms and endorsements that comprise the policy; among other
11   features).  (*See,* Wagoner Decl. (Dkt #41-3), Ex. 8, at p. 75). Thus, it identifies
12   Trimble as a "Named Certificate Holder" under "Master Policy #AU201500000630"
13   – the NY Marine policy on which "ICANA-3" (formally the "Intermodal Contractors
14   Association of North America") is listed as a "named insured".  It also identifies
15   Trimble's tractor by make, model, year, and VIN number, and indicates the types of
16   coverages provided and the limits of liability. (See, Wagoner Decl. (Dkt #41-3), Ex.
17   8, at p. 75)

18         In contrast, the "certificate" purportedly issued to DLR is a "Certificate of
19   Insurance". (*See,* FAC (Dkt. #37-2), Ex. B, at p. 2).  The Court may readily see for
20   itself that despite Williamsburg's attempt to conflate them, these are not analytically
21   identical or even similar documents in substance or effect.[1]

22

23   _____

[1] In fact, the "certificate of insurance" purportedly issued to DLR is a document which
24   is not a *part* of a policy, but which is commonly issued by brokers and which
25   "is merely evidence that a policy has been issued; it identifies the types of policies
     issued, the dates of coverage and the dollar limits of coverage. The document is not
26   intended to inform the certificate holder of every, or any, limitation on or exclusion
     from coverage". *Multicare Health System v. Lexington Ins. Co.,* 539 Fed.Appx. 768,
27   770-771 (9th Cir. 2013) (quoting *Travelers Prop. Cas. Co. of Am. v. Superior Court,*
     215 Cal.App.4th 561, 582 (2013)).  It does not "create any coverage or legal
28

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

14

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

More significantly, Williamsburg's argument ignores the "BROADENED NAMED INSURED" endorsement contained in the NY Marine policy which appears a mere ten pages before the "Designated insured" endorsement on which its argument focuses. (FAC (Dkt. 37-1), Ex. A, at p. 57.) That endorsement establishes that "any organization [ICANA] designate[s] as a member of the Intermodal Contractors Association of North America (ICANA) *as a certificate holder under this policy*

---

obligations between the insurer and the certificate holder. … Indeed, 'a standard certificate of insurance is not a contract of any sort." *McMillin Constr. Servs., L.P. v. Arch Spec. Ins. Co.,* Case no. 10CV2592 DMS (MDD), 2012 WL 13175913 *3 (S.D.Cal. April 25, 2012) (quoting *Hille*, *et al.*, *Appleman on Insurance Law* § 3.03A (2011)); *Empire Fire & Marine Ins. Co. v. Bell,* 55 Cal.App.4th 1410, 1423 fn. 25 (1997) (same). Indeed, reflecting this, the Certificate itself expressly states in all capital lettering in its header that: "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND, OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AN THE CERTIFICATE HOLDER." (FAC (Dkt. #37-2), Ex. B, at p. 2.) And that language is not only required by statute, but as well, routinely enforced by California courts. *Empire Fire & Marine Ins. Co., supra,* 55 Cal.App.4th 1410, 1423, n. 25 (citing 13A Appleman, op. cit., supra, § 7530 (1996–97 pocket supp.) p. 20.) ("[A] certificate of insurance is merely evidence that a policy has been issued…It is not a contract between the insurer and a certificate holder." ); *Pardee Const. Co. v. Ins. Co. of the W.*, 77 Cal.App.4th 1340, 1347 (2000) (same); *see also*, Ins. Code § 384(a) ("A certificate of insurance . . . shall contain . . . words to the effect of: This certificate or verification of insurance is not an insurance policy and does not amend, extend or alter the coverage afforded by the policies listed herein. Notwithstanding any requirement, term, or condition of any contract or other document with respect to which this certificate or verification of insurance may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of the policies."); *Carolina Cas. Ins. Co. v. Estate of Fuentes* 433 Fed. Appx. 608, 610 (9th Cir. 2011) (applying California law and quoting *Bell*, *supra*, for the proposition that "under California law, a certificate of insurance cannot amend an insurance policy.").

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

15

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

number…" "will qualify as a Named Insured" under the NY Marine policy. *Id.* Read together with the "Certificate" issued to Trimble, it should be apparent that the effect is to render Trimble a "named insured" under the NY Marine policy—and that the "certificate of insurance" purportedly issued to DLR was neither intended to nor actually has that effect. (*Compare*, FAC, Ex. A (Dkt #37-1) at p. 57, with Wagoner Decl., (Dkt #41-3), Ex. 8, at p. 75, and FAC, Ex. B (Dkt. #37-2) at p. 2.)

In short, Williamsburg's *entire* argument regarding the parties' "insured" status and the resulting effect of the MCS-90 endorsement is predicated first on a misconstruction and conflation of the two separate "certificates" at issue; and second, on a profound misreading of the NY Marine policy—errors which are apparent upon even cursory inspection of the relevant documents. (*Compare*, FAC, Ex. A (Dkt #37-1) at p. 57, with Wagoner Decl., (Dkt #41-3), Ex. 8, at p. 75, and FAC, Ex. B (Dkt. #37-2) at p. 2.) Because Williamsburg's analysis of the NY Marine policy is grounded in such a fundamental misreading of the policy and its related documents, the legal conclusions it draws from its interpretation are incorrect for that same reason.[2] It therefore goes without saying that Williamsburg's incorrect analysis of the NY Marine policy does not support any viable claim for relief against NY Marine.

**D.** **Williamsburg Is Not Entitled To Recover Its Settlement Payments By Way Of Its Claim For Equitable Indemnity**

With respect to its claim for "equitable indemnity", Williamsburg cites numerous *non-insurance* cases for the proposition that "equitable indemnity" "requires no contractual relationship", and permits the complaining party to recover "subject to allocation of fault principles and comparative and equitable apportionment of loss", in support of its contention that it is entitled to recover 100% of the $1,000,000 paid to indemnify DLR.

---

[2] While NY Marine will not belabor the point, this is a shocking series of errors for a party which prefaced its argument with an explicit accusation that NY Marine's position is predicated upon a "false statement" "designed to mislead the Court".

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

Williamsburg's arguments fundamentally ignores that this is a dispute *between insurers, concerning their obligations under their respective insurance policies*. As a result, regardless of whether or not a claim for "equitable indemnity" "*requires*" a contractual relationship, *here, there are contracts*, and the limitations they impose on the parties' respective obligations remain controlling. Indeed, in this respect, to that end, if NY Marine owed any duty to indemnify DLR, that duty was limited to the policy limits available under the NY Marine policy. Here, Williamsburg's FAC admits that NY Marine settled the underlying claims against Trimble at a cost of $155,000. (FAC (Dkt. #37), at ¶ 13.) As a result, at most only $845,000 of the $1,000,000 limit of liability under its policy remained available at the time Williamsburg and DLR demanded that NY Marine fund the settlement of the default judgment against DLR.

**E.     Because the Fosters Released NY Marine, The MCS-90 Endorsement to the NY Marine Policy is Immaterial**

Furthermore, in addition to settling the claims asserted against Trimble,  the Fosters released not only Trimble, but NY Marine. (Wagoner Decl. (Dkt. #41-3) ¶¶ 12-13, and Exs. 11-12, at pp. 82-89.) Williamsburg contends that NY Marine "waived" this argument because it allegedly failed to raise it in its initial motion to dismiss. (Opp., at 19:23-20:5.) But in fact, although Williamsburg legal theories have since changed, NY Marine *did* raise the issue of the release in that brief. (*See,* Dkt. #10-2, at pp.18:17-19:1).

Here, Williamsburg offers no substantive argument except to contend that that "[i]n any event", it "has the right to recover pursuant to principles of contribution and indemnity pursuant to Cal. Civ. Code §§ 1432 and 2848." (Opp., at p. 20:2-4.) However, as explained in detail in NY Marine's opening brief, since a surety has only the rights of the creditor whom it has paid—in this case, the Fosters—their releases of NY Marine extinguishes Williamsburg's claims, whether in equitable indemnity or contribution, including claims asserted under Civil Code §§ 1432 and 2848. (Dkt.

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

#41-2, at pp. 22:14-28:19.).

### F.     The MCS-90 Is Not Applicable to Williamsburg's Claims

As courts have consistently held, and this court previously concluded, the MCS-90 endorsement is inapplicable to Williamsburg's claims against New York Marine. (Sept. 29, 2021 Order (Dkt. #18) at p. 11:4-9 [concluding that "the MCS-90 does not apply here because 'the integral purpose of the MCS-90, to protect third party members of the public, is not implicated in a dispute between two insurers.'"][quoting *John Deere Ins. Co. v. Nueva*, 229 F.3d 853, 858 (9th Cir. 2000).)[3]

Beyond asking this Court to reconsider that conclusion, Williamsburg offers no legal analysis to support its position or which refutes that widely accepted proposition.

### G.     Even if The MCS-90 Is Relevant, Since it Applies Only To The "Named Insured"—Arthur Trimble Jr.—And Not DLR, Williamsburg Has No Basis For Recovery Under Any Of Its Theories

Aware that neither its theory of "constructive notice" nor its various theories of tort recovery suffice to state a viable claim for relief against NY Marine, Williamsburg presses an alternative claim: that the MCS-90 endorsed to the NY Marine policy also provides coverage to DLR, and consequently obligated NY Marine to indemnify DLR notwithstanding its lack of notice or tender of its defense to NY

---

[3] *See also Canal Ins. Co. v. Distribution Servs., Inc.,* 320 F.3d 488, 492 (4th Cir. 2003) (citing federal cases applying majority view "that the MCS–90 endorsement does not control the allocation of loss among insurers."); *Occidental Fire & Cas. Co. of N. Carolina v. Int'l Ins. Co*., 804 F.2d 983, 986 (7th Cir. 1986) (rejecting argument that endorsement controlled intra-insurer allocation); *Empire Fire & Marine Ins. Co. v. J. Transport, Inc*., 880 F.2d 1291, 1298–99 (11th Cir.1989); (same); *Grinnell Mut. Reinsurance Co. v. Empire Fire & Marine Ins. Co*., 722 F.2d 1400, 1404 (8th Cir.1983) (same); *Carolina Cas. Ins. Co. v. Insurance Co. of North Am*., 595 F.2d 128, 140–41 (3d Cir.1979) (same); *John Deere Ins. Co. v. Truckin' USA,* 122 F.3d 270, 271-282 (5th Cir. 1997), and citing *Carolina Cas. Ins. Co. v. Underwriters Ins. Co.* 569 F.2d 304, 313 (5th Cir. 1978) ("ICC Policy factors are frequently determinative where protection of a member of the public ... is at stake, but those factors cannot be invoked by another insurance company which has contracted to insure a specific risk and which needs no equivalent protection.").

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

18

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

1    Marine. However, for the reasons set forth in both NY Marine's memorandum in

2    support of its motion and in this Reply memorandum, NY Marine cannot be liable to

3    Williamsburg on the basis of its MCS-90. In this respect, as set forth above, despite

4    Williamsburg's manifest misreading or misrepresentation of the terms of the NY

5    Marine policy, Trimble is a "named insured" under the NY Marine policy while DLR

6    is *not* a "named insured" under the policy. *See, supra,* Sec. II.D, at pp. 16. In turn,

7    because, for the reasons set forth at length in NY Marine's memorandum in support

8    of this motion, the obligation imposed under the MCS-90 applies only to named

9    insureds and not additional insureds—such as DLR—Williamsburg cannot predicate

10    its claim against NY Marine on the MCS-90 under *any* of its theories of liability. (*See,*

11    NY Marine's Memo. of P&As ISO MTD FAC, (Dkt. #41-2) at pp. 16:9-20:6.)

12         In this respect, and as observed in NY Marine's memorandum in support of this

13    motion, Williamsburg's FAC effectively concedes that DLR did not provide notice of

14    its claim or attempt to tender its defense to NYM until, at the earliest, July 29, 2020—

15    well after the Fosters' default had been entered, DLR's attempt to set aside the default

16    denied, and a default judgment in the amount of $6,085,702 had been entered against

17    DLR. (FAC ¶¶ 18-19; *see also,* NY Marine's Memo. of P&As ISO MTD FAC, (Dkt.

18    #41-2) at pp. 8:27-9:6; September 29, 2021 Order (Dkt. #18) at p. 10:5-9.) DLR thus

19    failed to timely tender its defense, resulting in undeniable prejudice to NY Marine

20    and vitiating any claim which DLR may have had under the NY Marine policy—a

21    conclusion previously reached by this Court and consistent with California law. *See,*

22    *e.g., Earle, supra,* 935 F.Supp. 1076, 1080-1082; 350 W.A., LLC*, supra*, 2011 WL

23    4506981 at *8; *see also Sphere Drake Ins., PLC, supra,* 225 Fed. App'x. 498, 499

24    (affirming summary judgment for insurer where notice was provided after default

25    judgment was entered and settlement value of claim was well below policy limit); *see*

26    *also,* (Sept. 29, 2021 Order, Dkt # 18, at pp. 10:5-9.).

27         Furthermore, Williamsburg's FAC effectively admits that it also did not have

28    any contact with NY Marine until January 5, 2021 when it wrote to NY Marine to

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

1  "demand" that it fund the settlement of the default judgment entered against DLR.

2  (FAC (Dkt. 37) at ¶ 24.) Consequently, Williamsburg cannot point to its own January

3  5, 2021 letter as providing pre-default judgment "notice" to NY Marine since, by that

4  point, DLR had already failed to comply with the NY Marine policy's notice

5  requirement resulting in prejudice in the form of the $6,085,702 default judgment.

6       It follows that because, as outlined above, NY Marine cannot owe a greater

7  duty to Williamsburg than it owed to DLR, Williamsburg can only recover to the

8  extent that NY Marine was obligated to indemnify DLR under the MCS-90

9  endorsement to the NY Marine policy. However, since properly interpreted, the MCS-

10  90 does not apply to DLR, Williamsburg cannot support *any* of its claims against NY

11  Marine. This is because, as to Williamsburg's ninth through eleventh causes of action

12  for negligence, common law tort of another, and statutory tort of another, NY Marine

13  breached no duty which it owed to either DLR or Williamsburg such that

14  Williamsburg cannot state a viable claim for relief sounding in tort. And, as to *each*

15  *and every one* of Williamsburg's claims, because of the lack of any timely tender by

16  DLR or Williamsburg, there is no coverage for DLR under the NY Marine policy

17  itself, nor since DLR is not a named insured, under the MCS-90. As a result, NY

18  Marine simply owes no equitable obligation to share with Williamsburg, whether as

19  a co-insurer, co-indemnitor or co-surety.

20       Notably, Williamsburg's arguments concerning the MCS-90 take the expressly

21  contradictory positions regarding the effect of that endorsement. In this respect, under

22  a section entitled "If Defendant had no Constructive or Actual Notice of the Claim

23  Against DLR and Suffered Prejudice, Defendant Became Liable Under its MCS-90

24  Endorsement", DLR expressly argues that "[e]ven if defendant New York Marine was

25  able to establish that it was substantially prejudiced by DLR's failure to provide

26  timely notice, the MCS-90 endorsement attached to Defendant's policy would require

27  Defendant to pay $1,000,000 to satisfy the claims of the *Foster* plaintiffs." (Opp. (Dkt.

28  #42), at pp. 11:19-26); *see also, Id.,* at pp. 12:3 (In this case, because the MCS-90

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

20

endorsement in both policies applies to DLR…"). In contrast, at page 16 of its Opposition, Williamsburg argues that it "does not contend that the MCS-90 endorsement affects or determines the allocation between Plaintiff and Defendant in this case." *Id.,* at p. 16:7-8.

Williamsburg then attempts to distinguish the issue raised by NY Marine— whether the holding in *John Deere Ins. Co. v. Nueva, supra,* 229 F.3d 853—"would require [NY Marine] to pay $1,000,000 to satisfy the claims of the *Foster* Plaintiffs" "[e]ven if [it] was able to establish that it was substantially prejudiced by DLR's failure to provide timely notice" by arguing that "*John Deere (Nueva)* is distinguishable because the case did not involve a dispute between insurers" and "instead … was [about] whether the MCS-90 endorsement extended to permissive users who were not named insureds under the policy. [Citation.] Appellants were 'injured members of the public seeking redress." (Opp. (Dkt. #42), at p. 16:20-24.) Thus, Williamsburg concludes that "[i]n this case, because the MCS-90 endorsement in both policies applies [sic] to DLR, [Williamsburg] and [NY Marine] are co-sureties." (*Id.,* at p. 17:18-19.)

Williamsburg's argument misses the point: if the MCS-90 endorsement to the NY Marine policy *does not apply to DLR*, *then it likewise does not require NY Marine* to fulfill the "integral purpose of the MCS-90, to protect third party members of the public"—i.e., *the Fosters*—on behalf of DLR. *See, e.g., John Deere v. Nueva, supra,* 122 F.3d at 274-275. Rather, that obligation would fall solely upon Williamsburg, whose MCS-90 *admittedly applies to DLR*. (FAC, ¶ 69.) As a result, DLR can state no viable claim against NY Marine, since they are neither co-sureties, nor equally obligated to protect DLR for the loss it suffered.

Here, for the reasons set forth in extensive detail in NY Marine's memorandum in support of this motion—and substantively unaddressed in Williamsburg's Opposition—the Ninth Circuit's holding in *John Deere v. Nueva, supra,* that the MCS-90 applies to "additional insureds" such as DLR, is demonstrably incorrect.

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

21

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

1  (NY Marine's Memo. of P&As ISO MTD FAC, (Dkt. #41-2) at pp. 16:9-20:16.) And,

2  for the reasons also addressed therein, the 2004 Regulatory Guidance issued by the

3  Federal Motor Carrier Safety Administration expressly rejecting *John Deere's*

4  interpretation is entitled to sufficient deference so as to justify this Court's departure

5  from *John Deere*.  (*Id.*)

6  **H.  New York Marine's Motion To Dismiss Williamsburg's First Amended Complaint Is Neither Governed By The "Law Of The Case" Nor Is It A "Motion for Reconsideration"**

7

8  The "law of the case" does not apply to interlocutory orders such as orders

9  partially denying a motion to dismiss. *See Kearney v. Foley and Lardner*, 2012 WL

10  13175644 at *3 (N.D. Cal. July 31, 2012) ("Numerous other cases reiterate that the

11  law of the case doctrine does not apply to interloctory orders issued before a judgment

12  is entered."); *see also Askins, supra,* 899 F.3d 1035, 1042 ("The law of the case

13  doctrine does not preclude a court from reassessing its own legal rulings in the same

14  case."). Rather, the law of the case only applies where a court "has entered a final

15  decree or judgment." *Askins*, 899 F.3d at 1042-43. Because this Court's prior order

16  on the previous Motion to Dismiss was not a final decree or judgment, it does not act

17  as a bar to any arguments that Williamsburg has raised regarding the legal sufficiency

18  of Williamsburg's First Amended Complaint.

19  "[A]fter amendment the original pleading no longer performs any function and

20  is treated thereafter as non-existent[.]" *Ferdik v. Bonzelet,* 963 F.2d 1258, 1262 (9th

21  Cir. 1992); *Askins, supra,* 899 F.3d at 1043. In turn, "the filing of

22  an amended complaint does not ask the court to reconsider its analysis of the initial

23  complaint. The amended complaint is a new complaint, entitling the plaintiff to

24  judgment on the complaint's own merits; we do not ask whether the plaintiff is

25  'precluded' or 'barred' by the prior ruling." *Askins, supra,* 899 F.3d at 1043; *Burchett*

26  *v. Global Supertankers Services, LLC,* Case no. 2:19-cv-01812-MCE-JDP, 2021 WL

27  1614397 *5 fn. 4 (E.D.Cal. April 26, 2021) (same); *R and R Surg. Instit. v. Int'l*

28  *Longshore and Warehouse Union,* Case no. CV 21-00640-MWF (ASx), 2022 WL

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

1515686 *8 (C.D.Cal. March 8, 2022) (same). Consequently, because an Amended complaint stands on its own, it follows that analysis of a motion to dismiss likewise stands on its own – the court is free to apply the same reasoning if it deems it appropriate, but is entitled to alter its conclusions if appropriate.

Notably, only *one* of the cases cited by Williamsburg—*Vanleeuwen v. Keyuan Petrochem., Inc.,* Case No. CV 11-9495 PSF (JCGx), 2013 WL 2247394 (C.D.Cal. May 9, 2013)—addresses the application of the "law of the case" doctrine in the context of a motion to dismiss an amended complaint. However, *Vanleeuwen* fails to address the general principle that the filing of an amended complaint stands on its own.

It follows that NY Marine is entitled to challenge Williamsburg's FAC "on the [FAC's] own merits", and that the Court may choose to apply the same reasoning it has previously applied—but is not "bound by any law of the case", and is "free to correct any errors or misunderstandings".

Furthermore, though Williamsburg endeavors to emphasize that the factual allegations of its FAC are substantially unchanged, Williamsburg's opposition makes clear that it is pursuing new and updated legal theories that were not present in its initial complaint. *See* (Opp. (Dkt. #42) at pp. 10:11-13 ("Plaintiff contends a 100% contribution claim is permissible under the law, but to avoid a dispute over that legal issue, the First Amended Complaint adds the Fifth through Eighth Claims for Relief for indemnity.) Indeed, Williamsburg's FAC not only adds numerous new causes of action, but also centrally relies on a legal theory that the Court previously rejected. Specifically, as detailed in the Opposition, Williamsburg itself now asks this Court to reconsider its analysis of the MCS-90 to the parties' claims—thereby constituting sound evidence that its claims as stated in the FAC rely on theories not previously asserted in its initial complaint. (*See, e.g., Id.,* at pp. 10:11-13, 15:5-18:8 [asserting new arguments regarding the MCS-90].)

Consequently, because the "law of the case" is not brought into play by

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

interlocutory orders, and because Williamsburg's FAC may be fairly read to present new and different legal theories which NY Marine is entitled to test, the present motion to dismiss is neither an improper "motion to reconsider" nor subject to the "law of the case".

I.    **Williamsburg's Procedural Arguments Reflect A Lack of Good-Faith Meet-and-Confer Efforts on Its Part**

As relevant, Local Rule 7-3 states that:

In all cases not listed as exempt in L.R. 16-12, and except in connection with discovery motions (which are governed by L.R. 37-1 through 37-4) and applications for temporary restraining orders or preliminary injunctions, counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution.

As Courts addressing the rule have observed, "Local Rule 7-3 isn't just a piece of petty pedantry put down to trip up lawyers. Nor is Local Rule 7-3 a mere formalism simply there to be checked off by lawyers. [Citation.] Rather, the rule allows excellent lawyers to "avoid unnecessary litigation," "focus and clarify disputes," and "fully honor [their] own obligations under Federal Rules of Civil Procedure 1." *Vape Society Supply Corp. v. Zeiadeh,* 2017 WL 2919080 *2 (C.D.Cal. Feb. 6, 2017) (citing *Lopez v. Wells Fargo Bank, N.A.,* No. SACV 16-01409 AG (KESx), 2016 WL 6088257 *2 (C.D.Cal. Oct. 17, 2016)). Thus, interpreting that rule, Central District Courts have observed that it requires the parties to "thoroughly discuss the substantive issues raised by the contemplated motion", and "make a good faith, fully informed effort to reach a resolution." *Id.* Thus, "[t]he meet-and-confer requirement is not a casual suggestion, but a directive aimed at "a possible informal resolution" and "enabl[ing] the parties to brief the remaining disputes in a thoughtful, concise and useful manner." *Boedeker v. Farley,* Case No. SA CV 19-2443-DOC-JDE, 2020 WL 2536969 *1 (C.D.Cal. Feb. 5, 2020) (quoting *Caldera v. J.M. Smucker Co.,* No. CV 12-4936 GHK

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

1   (VBKx), 2013 WL 6987905  *1 (C.D.Cal. June 3, 2013)).

2          Prior to the filing of the present motion, and in an effort to address NY Marine's

3   position with respect to the FAC, between March 22, 2022, and April 22, 2022, NY

4   Marine provided Williamsburg with multiple written statements, and engaged in a

5   formal telephonic "meet and confer" discussion on April 7, 2022, in which it set forth

6   its views on Williamsburg's claims in extensive detail, both generally and as they

7   related to the FAC and NY Marine's anticipated motion to dismiss. (Supplemental

8   Declaration of James P. Wagoner, "Supp. Wagoner Decl.", ¶¶ 4-5, Ex. 1.)  In total,

9   NY Marine's written correspondence ran to some 15 single-spaced pages, and both in

10   its written communications and during the telephonic conference, NY Marine

11   *explicitly* advised Williamsburg of the specific grounds for its motion. (*Id.,* at ¶¶ 5-7,

12   Ex. 1.) Moreover, during the telephonic conference on April 7, 2022, the undersigned

13   counsel *expressly advised* counsel for Williamsburg that after research and

14   consideration, and contrary to its initial impression, NY Marine believed it was

15   appropriate to file this motion *even as to the causes of action as to which the court*

16   *had previously denied NY Marine's motion by way of* its September 29, 2021 Order.

17   (*Id.,* at ¶ 8.)

18          At no time did Williamsburg indicate that it believed any element of the motion

19   was procedurally improper—indeed, though it no doubt *disagreed* with NY Marine's

20   theories,  Williamsburg did not indicate that it had objections to the motion on any

21   specific basis whatsoever. (*Id.,* at ¶ 9.) That it now contends that the motion is

22   substantially improper is belied by its meet-and-confer efforts.

23   **IV.   CONCLUSION**

24          For the reasons set forth in its moving papers and in this reply, NY Marine

25   respectfully requests that the Court grant its motion to dismiss as to all causes of

26   action.

27   Dated:  June 28, 2022                    /s/ James P. Wagoner
                                          _____
28                                             James P. Wagoner

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

25

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT

**PROOF OF SERVICE**

**Williamsburg National Insurance Company v. New York Marine and General Insurance Company**
**Case No. 2:21-cv-04377 RSWL (JDEx)**

**STATE OF CALIFORNIA, COUNTY OF FRESNO**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Fresno, State of California.  My business address is 7647 North Fresno Street, Fresno, CA 93720.

On June 28, 2022, I served true copies of the following document(s) described as **NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT** on the interested parties in this action as follows:

| | |
|---|---|
| John E. Peer<br>Ira Goldberg<br>Woolls Peer Dollinger & Scher<br>A Professional Corporation<br>One Wilshire Building<br>624 South Grand Avenue, 22nd Floor<br>Los Angeles, CA 90017<br>Telephone: (213) 629-1600<br>Facsimile: (213) 629-1660<br>Email: jpeer@wpdslaw.com<br>    igoldberg@wpdslaw.com | *Attorneys for Plaintiff Williamsburg National Insurance Company* |

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 28, 2022, at Fresno, California.

*/s/ Marisela Taylor*
Marisela Taylor

8488760.1

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS WILLIAMSBURG'S FIRST AMENDED COMPLAINT